STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

ESTHER G. MELDER

VERSUS

BROOKSHIRE'S GROCERY COMPANY, ET AL.


**********

APPEAL FROM THE
TENTH JUDICIAL DISTRICT COURT
PARISH OF NATCHITOCHES, NO. C-85464, DIV. A
HONORABLE ERIC R. HARRINGTON, DISTRICT JUDGE

**********

JIMMIE C. PETERS
JUDGE

**********

Court composed of John D. Saunders, Jimmie C. Peters, and James T. Genovese, Judges.


AFFIRMED AS AMENDED.

David A. Hughes
Hughes Law Firm
P. O. Box 1831
Alexandria, LA 71309-1831
(318) 443-4090
COUNSEL FOR DEFENDANTS/APPELLANTS:
    Brookshire's Grocery Company
    DeRon Floyd
    Allen Hudson
    Richard Cogburn

Otis E. Dunahoe, Jr.
Dunahoe Law Firm
P. O. Box 607
Natchitoches, LA 71458-0607
(318) 352-1999
COUNSEL FOR PLAINTIFF/APPELLEE:
    Esther G. Melder

**Gayla M. Moncla**
**Kean Miller LLP**
**P.O. Box 3513**
**Baton Rouge, LA 70821**
**(225) 387-0999**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
    **Esther G. Melder**

**PETERS, J.**

The defendants in this litigation, Brookshire's Grocery Company (Brookshire's), Richard Cogburn, Deron Floyd, and Allen Hudson, appeal a trial court judgment rendered against them awarding the plaintiff, Esther Gay Melder, $343,331.12 in compensatory damages for injuries she sustained in an accident which occurred in a Natchitoches, Louisiana Brookshire's grocery store on July 23, 2011. For the following reasons, we amend the judgment to reflect that Deron Floyd and Allen Hudson were not cast in judgment, but affirm the judgment in all other respects.

## DISCUSSION OF THE RECORD

Esther Gay Melder, a Natchitoches, Louisiana resident, was shopping in a Natchitoches Brookshire's grocery store on July 23, 2011, when a sign located over a cooler in the meat and seafood department fell and struck her. The sign weighed approximately five pounds and measured twenty-three and five-eighths inches by forty-eight inches by one-half inch. The sign had been in place for approximately four years and was installed by Richard Cogburn, the Marketing Manager of Brookshire's Natchitoches store.

Mrs. Melder filed a petition for damages on July 18, 2012, alleging that the negligence and fault of Brookshire's, concurrently with the negligence and fault of its employees, Deron Floyd, Allen Hudson, and Richard Cogburn, caused the accident and her injuries. The matter ultimately went to trial on November 7, 2013, and upon completion of the evidence, the trial court factually found that Brookshire's breached its duty to keep its premises safe for patrons, as did its employee, Mr. Cogburn. The trial court also found no fault on the part of Mrs. Melder or the remaining two defendants. After allowing the parties to submit

quantum briefs, the trial court issued written reasons for judgment which set the quantum recovery as follows:

*General damages*

| | |
|---|---|
| Pain and suffering since the accident | $84,000.00 |
| Future pain and suffering, including surgery | 150,000.00 |
| Loss of enjoyment of life | 40,000.00 |
| **Totals** | $274,000.00 |

*Special damages*

| | |
|---|---|
| Past Medical: | |
| Natchitoches Regional Medical Center | $3,644.50 |
| Ashley Ridge Imaging | 3,100.00 |
| Dr. Russell Tynes | 2,286.12 |
| Dr. Anil Nanda | 487.50 |
| **Totals** | $9,518.12 |

| | |
|---|---|
| Future Medicals for surgery: | |
| Willis Knighton Medical Center | $42,000.00 |
| Dr. Nanda | 17,813.00 |
| **Totals** | $59,813.00 |

| | |
|---|---|
| Total Award | $343,331.12 |

After the trial court executed a judgment corresponding to its reasons for judgment, the defendants perfected this appeal. In their appeal, they assert four assignments of error:

1. The trial court erred in not considering the evidential contradictions of Mr. and Mrs. Melder and their son's testimony (as to her health problems prior to the incident at issue) as opposed to records and testimony of fact.

2. The trial court erred in its award of both the past and future physical and mental pain and suffering as well as future medical and loss of enjoyment of life.

3. The trial court erred in including the estimated cost of Dr. Nanda's future services with his deposition and inclusion of the estimate into the trial court records.

4. The trial court erred in the inclusion of two of the defendants, Deron Floyd and Allen Hudson, in the court's opinion of determining fault

2

when, at the end of the trial, the court verbally had found them NOT to be in fault in this proceeding.

## OPINION

### *Assignment of Error Number One*

In their first assignment of error, the defendants argue that the trial court erred in not considering the evidentiary contradictions present in the testimony of Mr. and Mrs. Melder and their son as those contradictions relate to her medical history. This assignment of error questions factual findings of the trial court, and it is well settled that a reviewing court may not set aside a factfinder's determinations absent manifest error. *Stobart v. State through Dep't of Transp. & Dev.*, 617 So.2d 880 (La.1993). This court reasserted that basic rule of appellate review in *Poole v. Poole*, 08-1325, p. 5 (La.App. 3 Cir. 4/1/09), 7 So.3d 806, 810, wherein it stated the following:

> In order to reverse a fact finder's determination of fact, an appellate court must review the record in its entirety and meet the following two-part test: (1) find that a reasonable factual basis does not exist for the finding, and (2) further determine that the record establishes that the fact finder is clearly wrong or manifestly erroneous. [*Stobart*, 617 So.2d 880 (La.1993).] Where there is conflict in the testimony presented at trial, the trial court's reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review. *Rosell v. ESCO*, 549 So.2d 840 (La.1989). A trial court's credibility determinations are subject to the strictest deference, and the manifest error or clearly wrong standard demands great deference for the trial court's findings. *Theriot v. Lasseigne*, 93-2661 (La.7/5/94), 640 So.2d 1305. "[T]he issue to be resolved by a reviewing court is not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one." *Stobart*, 617 So.2d at 882. Thus, if the trial court's decision is reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse even though the appellate court would have weighed the evidence differently. *Rosell*, 549 So.2d 840.

The evidence presented at trial established that Mr. Cogburn was the Marketing Manager for Brookshire's Natchitoches store at the time of the accident and was the individual who installed the sign that struck Mrs. Melder. The record

also established that Mrs. Melder sought medical treatment from Dr. Paul Wheeler, an emergency room physician at Natchitoches Regional Medical Center (Natchitoches Regional) in Natchitoches, Louisiana; Dr. Russell Tynes, a Shreveport, Louisiana internist; and Dr. Anil Nanda, a Shreveport, Louisiana neurosurgeon.

Dr. Wheeler was the first physician to see Mrs. Melder after the accident. Mrs. Melder reported the accident to Brookshire's store manager before she left the store, but did not immediately seek medical attention. Instead, she purchased her items and returned home, where she informed her husband of the incident, told him she was in pain, and asked him to take her to the hospital. Part of her concern at the time was that she previously underwent two cervical surgeries that resulted in a fusion of her spine from the C-3 through the C-6 area. She testified that she feared the accident may have caused further damage to her neck.

Mr. Melder drove his wife to Natchitoches Regional where she was examined by Dr. Wheeler in the emergency room. Dr. Wheeler testified that Mrs. Melder complained to him of neck and left shoulder pain caused by being hit by a falling sign. According to Dr. Wheeler, an x-ray of her neck revealed arthritic changes as well as evidence of her prior surgery. Dr. Wheeler rated Mrs. Melder's pain as one or two on a scale of one to ten, provided her with a prescription for pain medication, and released her. Mrs. Melder, on the other hand, rated her pain as being at the top of the pain scale.

Dr. Tynes previously treated Mrs. Melder between 2008 and 2010, for complaints of back pain radiating down both legs. His diagnosis at that time had been sciatica affecting both legs, which he treated with steroid injections. He testified that following the July 23, 2011 accident, he saw Mrs. Melder for the first

4

time on August 11, 2011. At that time, she complained to him of severe pain in her neck area, lower back and hips, and down into her legs. He treated these complaints with a steroid injection as well.

On August 30, 2011, or less than one month after her first visit to Dr. Tynes, Mrs. Melder saw Dr. Nanda for her complaints related to the July 23, 2011 accident. Dr. Nanda had performed Mrs. Melder's cervical fusions in 2005, and saw her again in 2009, for pain in her upper left extremity; and Mrs. Melder had returned to him expressing concern about her previous cervical fusions and the effect the recent accident may have had on them. Dr. Nanda examined Mrs. Melder on August 30, 2011, and found no evidence to suggest that her cervical fusions were affected by the July 23, 2011 accident.

Thereafter, Mrs. Melder was followed by both Dr. Tynes and Dr. Nanda. At the instruction of Dr. Tynes, Mrs. Medler underwent an MRI on December 22, 2011. The results revealed that she suffered from a bulging disc and significant arthritic problems in her lumbar spine. Dr. Nanda reviewed the MRI and initially recommended conservative treatment with steroid injections. However, he suggested to her that if the conservative treatment was not productive or if her pain worsened, he would recommend that she undergo a lumbar laminectomy.

Dr. Tynes testified at the November 2013 trial on the merits that he last saw Mrs. Melder in September of 2013, and at that time, she still suffered from lower back pain, which limited her activities and diminished her lifestyle. His ultimate medical conclusion was that she suffered an aggravation of her preexisting conditions, "more likely than not" caused by the July 23, 2011 accident.

Dr. Nanda supported Dr. Tynes' conclusion concerning Mrs. Melder's condition and its causation, although he based his opinion primarily on the veracity of his patient. He testified:

> The bottom line is, I think the issue here is, based on the veracity of the patient, and she had preexisting degenerative condition, a traumatic event could have aggravated a preexisting condition. The trauma in itself would not have caused degeneration of the spine or neck, but an event could have made it worse, and that's based on her veracity. That's what I'm ethically comfortable with saying.

Mrs. Melder, who was eighty-two-years old at the time of trial, testified that she previously operated a Bed and Breakfast business in Natchitoches, and since her retirement, continued to assist her two sons in operating their similar businesses in Natchitoches. Her duties with her sons included "cooking, making jellies, overseeing or doing house cleaning, landscaping of the yards, and shopping for food." In fact, on the day of the accident, she was shopping for breakfast items for one of her son's establishments. Additionally, since her retirement and before the July 2011 accident, she had continued to do her own housework and yard work, enjoyed cooking and entertaining, and was an active bridge player.

According to Mrs. Melder, her lifestyle changed drastically after the accident in that her lower back pain began to significantly radiate down both legs, the effect of the steroid shots was shorter in duration, and the residual pain was much more severe than before the accident. Mrs. Melder testified that she has to curtail her activities, rest in bed for hours each day, and is never free from pain. The testimony of her husband of sixty-four years, L.J. Melder, Sr., and her son L. J. Melder, Jr., supported Mrs. Melder's testimony concerning her physical abilities both pre- and post-accident. Both testified that she has experienced a diminished ability to be active and perform any significant physical functions; that she

constantly complains of pain in her lower back and legs; and that the pain has gotten progressively worse.

With regard to its evaluation of the testimony before it, the trial court made the following finding in its written reasons for judgment:

> The court carefully observed Mrs. Melder as it listened to her testimony, and found her to be very credible and straightforward in her testimony. She has suffered considerable and much greater pain in her back and legs than before the accident, only [on] a now almost daily basis, and for which the steroid injections provide very little relief.

> The court also found the testimony of her husband and son to be credible as to her complaints of levels of pain and inability to function, and as to when the more severe problems began, following the accident.

> The court also found both her and their testimony to be compelling regarding how her life has changed since the accident. She was 80 when the accident occurred, but most of her back pain was being controlled by the steroids, and she lived a very active lifestyle for someone her age. Following the accident, she has suffered almost daily pain, has given up most of her activities, and goes to bed for several hours each afternoon. She has clearly suffered a loss of the enjoyment of her life. She will now undergo a laminectomy, she says.

Given the record before us, we find no manifest error in the trial court's factual determinations concerning the extent of Mrs. Melder's injuries. Thus, we find no merit in this assignment of error.

### *Assignment of Error Number Two*

The particulars of the accident were not seriously disputed at trial. The trial court found that Mr. Cogburn, as an employee of Brookshire's, breached his duty, and that as its employee, Brookshire's was responsible for his fault. The trial court found no fault as to Mr. Hudson or Mr. Floyd, and found no comparative fault as to Mrs. Melder. In this assignment of error, the defendants do not question the trial court's fault determinations, but question all aspects of the $274,000.00 general

7

damages award as well as the $59,813.00 award for future medical expenses. They complain that all of the awards are excessive.

Louisiana Civil Code Article 2315 provides that an individual is entitled to recover the damages she sustains as a result of another's fault. The damages are generally categorized as either special or general damages. General damages are based on the facts and circumstances of the particular case and may not be fixed with pecuniary exactitude. *Jones v. Centerpoint Energy Entex*, 11-02 (La.App. 3 Cir. 5/25/11), 66 So.3d 539, *writ denied*, 11-1964 (La. 11/14/11), 75 So.3d 946. General damages involve mental or physical pain or suffering, inconvenience, the loss of intellectual gratification or physical enjoyment, or other losses of life or life-style which cannot be definitely measured in monetary terms. *Id.* The role of an appellate court in reviewing general damages is to review the exercise of discretion made by a factfinder, and the adequacy of award should be determined by the facts or circumstances particular to case under consideration. *Youn v. Mar. Overseas Corp.*, 623 So.2d 1257 (La.1993). Additionally, "the discretion vested in the trier of fact is 'great' and even vast, so that an appellate court should rarely disturb an award of general damages." *Id.* at 1261. The standard for review for general damages is nonspecific, and it is only when an award is beyond that which a reasonable factfinder could assess for the effects of a particular injury to a particular plaintiff under the particular circumstances should an appellate court increase or reduce award of general damages. *Id.*

Special damages are those damages which may be determined with some degree of certainty and include past and future medical expenses. *McDaniel v. Carencro Lions Club*, 05-1013 (La.App. 3 Cir. 7/12/06), 934 So.2d 945, *writ denied,* 06-1998 (La. 11/3/06), 940 So.2d 671. The award of future medical

8

expenses must be supported by medical testimony indicating both their need and probable cost. *Id.*

In arguing this assignment to the court, the defendants assert that Mrs. Melder's degenerative joint disease had begun to worsen long before the July 2011 accident, that the accident was minor in nature, and that the acceleration of her condition was minimal. However, as previously stated, the trial court factually concluded otherwise, and we find no manifest error in those factual findings.

The trial court awarded Mrs. Melder general damages of $84,000.00 for past pain and suffering, $150,000.00 for future pain and suffering including surgery, and $40,000.00 for loss of enjoyment of life. It awarded special damages of $59,813.00, including Mrs. Melder's past and future medical expenses. Based on the vast discretion vested in the trial court with regard to general damage awards as set forth in *Youn*, 623 So.2d 1257, we find no abuse of discretion in the trial court's award of general damages in this case.

Next, the defendants argue that the trial court erred in awarding future medical expenses for the lumbar laminectomy recommended by Dr. Nanda. Again, the trial court obviously accepted Mrs. Melder's testimony that her condition had deteriorated to such a condition that she was willing to proceed with the recommended surgery. We find no manifest error in the trial court's findings of fact on this issue and find no abuse of discretion in awarding the future medical costs for the lumbar laminectomy procedure.

We find no merit in this assignment of error.

### *Assignment of Error Number Three*

In this assignment of error, the defendants assert that the trial court erred in including the estimated cost of Dr. Nanda's future services with his deposition and

9

inclusion of the estimate into the trial court records.[1]  However, the trial court is given vast discretion in its evidentiary rulings, and its decision to admit or exclude evidence will not be reversed on appeal in the absence of an abuse of discretion. *Bellsouth Telecomm., Inc. v. City of Lafayette*, 05-1478, 05-1505 (La.App. 3 Cir. 1/5/06), 919 So.2d 844.  We find no abuse of discretion in the trial court's inclusion of future estimated medical costs into the trial court records.  The evidence establishes that Mrs. Melder has decided to undergo a laminectomy to be performed by Dr. Nanda, as a result of injuries sustained in the July 2011 accident.

### Assignment of Error Number Four

In their fourth and final assignment of error, the defendants assert that the trial court erred in casting Deron Floyd and Allen Hudson in judgment with Brookshire's and Mr. Cogburn.

In the oral reasons rendered at trial on November 7, 2013, the trial court specifically stated that it found no fault on the part of Mr. Floyd or Mr. Hudson; and the January 6, 2014 written reasons for judgment make no mention of either man.  The issue raised by this assignment of error arises because the trial court executed a judgment on the same day it filed its written reasons for judgment, which makes no mention of either man as well.  Instead, it provides a short disposition of the case with the following language:

> For the reasons set forth in written ruling of even date herewith, it is therefore:
>
> **ORDERED, ADJUDGED AND DECREED** that there be judgment herein in favor of Esther G. Melder and against *defendants* in the full sum of Three Hundred Forty Three Thousand, Three Hundred Thirty One Dollars, and 12/100 ($343,331.12) cents, together with legal interest from date of judicial demand until paid, and all costs of these proceedings.

---

[1] The trial court found that the estimate was accidentally not attached to Dr. Nanda's deposition when filed and was "relevant to a determination of damages."

10

(Emphasis added.)

Out of concern that this language might constitute a judgment against Mr. Floyd or Mr. Hudson, the defendants raised this issue on appeal. However, this has become a non-issue on appeal because Mrs. Melder acknowledges to this court that her understanding was that the judgment refers only to Brookshire's and Mr. Cogburn as the defendants cast in judgment. Therefore, for the limited purpose of clarifying the judgment as rendered, we amend that judgment to read in pertinent part as follows:

> For the reasons set forth in written ruling of even date herewith, it is therefore:
>
> **ORDERED, ADJUDGED AND DECREED** that there be judgment herein in favor of Esther G. Melder and against defendants, Brookshire's Grocery Company and Richard Cogburn, in the full sum of Three Hundred Forty Three Thousand, Three Hundred Thirty One Dollars, and 12/100 ($343,331.12) cents, together with legal interest from date of judicial demand until paid, and all costs of these proceedings.
>
> **IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that the claims by Esther G. Melder against Deron Floyd and Allen Hudson are dismissed with prejudice.

## DISPOSITION

For the foregoing reasons, we affirm the trial court judgment awarding Esther Gay Melder general and special damages in the total amount of $343,331.12 against Brookshire's Grocery Company and Richard Cogburn. We further amend the trial court judgment to reflect that Deron Floyd and Allen Hudson were not cast in judgment to any extent. We assess all costs of this appeal to Brookshire's Grocery Company and Richard Cogburn.

**AFFIRMED AS AMENDED.**

11